## PROSECUTION FOR ABSTRACTION OF STOCK OF A FREE BANKING CORPORATION.

Circuit Court of Stark County.

WILLIAM L. DAVIS v. STATE OF OHIO.

Decided, July 21, 1910.

*Abstracting Property of Bank—Free Banks—Certificates of Shares Therein.*

An officer of a state bank, incorporated under the free banking act, who withdraws from its custody certain certificates of partially paid up shares of its capital stock, owned by him and by him hypothecated to it as additional security for an antecedent debt due from him to said bank, can not be convicted under Section 3821-85, Revised Statutes, of abstracting property of said bank.

HENRY, J.; MARVIN, J., and METCALFE, J., concur.

The plaintiff in error, an officer and director in the Canton State Bank, incorporated under the free banking act, was convicted of abstracting from it certain certificates of partially paid-up shares of its capital stock, owned by him and by him hypothecated as additional security for an antecedent debt due from him to said bank, the same being in alleged violation of Revised Statutes, Section (3821-85), which reads as follows:

"Every president, director, cashier, teller, clerk or agent of any banking company, who shall embezzle, abstract or willfully misapply any of the moneys, funds, or credits of such company, or shall, without authority from the directors, issue or put forth any certificate of deposit, draw any order or bill of exchange, make any acceptance, assign any notes, bonds, drafts, or bills of exchange, mortgage, judgment or decree, or shall make any

false entry in any bank book, report or statement of the company, with intent in either case to injure or defraud the company, or any other company, body politic or corporate, or any individual person, or to deceive any officer of the company, or any agent appointed to inspect the affairs of any banking company in this state, shall be guilty of an offense, and, upon conviction thereof, shall be confined in the penitentiary at hard labor, not less than one year, nor more than ten years."

Among the errors assigned is the fundamental one that the first count of the indictment, being the one on which the conviction was had, states no offense. This count charges that:

"William L. Davis and Corwin D. Bachtel late of said county, on or about the 13th day of December, in the year of our Lord one thousand nine hundred and four, at the county of Stark aforesaid, said William L. Davis being then and there an officer, to-wit, vice-president and a director of the Canton State Bank, a corporation, incorporated and organized as a banking company under the law of the state of Ohio, known as the free banking act passed 1851, by the Legislature of Ohio, and which banking company, on or about the 25th day of December, 1904, and at the time of the abstraction of the personal property of said banking company, to-wit, the certificates of stocks as hereinafter described, was doing a banking business in the city of Canton, Stark county, Ohio, as a free banking company, and said Corwin D. Bachtel being then and there and at the time an officer, to-wit, the cashier and director of the Canton State Banking Company, certain property, to-wit, certain certificates for 350 shares of the capital stock of said banking company, to-wit, certificate No. 20 for 100 shares, certificate No. 181 for 100 shares, certificate No. 223 for 100 shares, certificate No. 244 for 40 shares and certificate No. 256 for 10 shares, which said certificates of stock had theretofore been issued by the said Canton State Bank to the said William L. Davis, and which said certificates of stock had theretofore been hypothecated by the said William L. Davis with the said Canton State Bank, as security for moneys theretofore received by the said William L. Davis from the said, the Canton State Bank, and which said certificates were of the face value of fifty ($50) dollars per share, and upon which had been paid thereon the sum of thirty ($30) dollars per share, and which said certificates were then and there of the value of one hundred and five thousand ($105,000) dollars, of the personal property of and belonging to the said the Canton State Bank. They, the said William L. Davis and Corwin D. Bachtel, officers of the said

the Canton State Bank, as aforesaid, did, at the time and date aforesaid and at the county aforesaid, with the intent on their part to injure and defraud the said the Canton State Bank, unlawfully and fraudulently abstract from the possession of the said the Canton State Bank said certificates of stock heretofore described without the authority of any of the other officers and directors of the said the Canton State Bank, and thereby did defraud and injure the said the Canton State Bank.''

The alleged insufficiency of this indictment is predicated upon the provisions of Sections 11 and 12 of the Free Banking Act, Revised Statutes, Sections (3821-70) and (3821-71) as follows:

''Sec. 11.   The capital stock of every company shall be divided into shares of fifty dollars each, which shall be deemed personal property, and shall only be assignable on the books of the company, in such a manner as its by-laws shall prescribe; each bank shall have a lien upon all stock owned by its debtors, and no stock shall be transferred without the consent of a majority of the directors, while the holder thereof is indebted to the company.

''Sec. 12.   No company shall take, as security for any loan or discount, a lien upon any part of its capital stock; but the same security, both in kind and amount, shall be required of shareholders as of persons not shareholders; and no banking company shall be the holder or purchaser of any portion of its capital stock, or of the capital stock of any other incorporated company, unless such purchase shall be necessary to prevent loss upon a debt previously contracted in good faith, on security which, at the time, was deemed adequate to insure the payment of such debt, independent of any lien upon such stock; and stock so purchased shall in no case be held by the company so purchasing, for a longer period of time than six months, if the same can be sold for what the stock cost, at par.''

It will be noticed that these statutes give to a free banking corporation a lien upon all stock owned by its debtors, and provide that ''no stock shall be transferred without the consent of a majority of the directors while the holder thereof is indebted to the company.''   They further provide that ''no company shall take, as security for any loan or discount, a lien upon any part of its capital stock,'' and ''that no banking company shall be the holder or purchaser of any portion of its capital stock   *  .  *   *   unless such purchase shall be necessary to prevent loss upon a debt previously contracted,'' etc.   The certificates of stock in

the case before us were not transferred upon the books of the company from the name of the plaintiff in error to that of the defendant in error, so as to make the bank "the holder or purchaser of any portion of its capital stock" represented by such certificates.  The only possible property interest, which could have been contemplated by this transaction as passing from Davis to the bank, in and to the certificates in question or the portion of the bank's capital stock which they represented, was that of a pledge, or the lien created by a deposit of certificates of stock as collateral security for a debt owing by the bailor to the bailee.  But the object thus contemplated is specifically prohibited by the statutory provision already quoted, that "no company shall take as security for any loan or discount a lien upon any part of its capital stock."  This prohibition is, if possible, made more specific by the circumstance that the statute provides that such "bank shall have a lien upon all stock owned by its debtors," and this without the necessity of any deposit, contract or other transaction whatsoever; and by the further circumstances that the statute expressly allows the outright purchase by the bank of its stock owned by its debtor when "necessary to prevent loss upon a debt previously contracted in good faith," etc.  The property rights in its own stock which a free banking corporation may not have, and those also which it may or does have, are alike defined and limited by express provisions of law, and such enumeration is necessarily exclusive.

It follows that the deposit by Davis of his certificates of stock with the bank, and the acceptance of such deposit by the bank, for the purpose of creating a lien thereon or upon the stock represented thereby, was *ultra vires* and in contravention of an explicit provision of the statute by which the bank was created and under which alone it could lawfully do business.  The transaction was vain and nugatory.  It could accomplish nothing beneficial to the bank, for the bank had its statutory lien: and if a pledgee's lien be supposed to be in any respect superior to or different from the statute lien, the bank could derive nothing therefrom, because such superiority, or difference, if any, transcended the express limitations upon the bank's authority to have or enjoy a lien upon its own stock.

In this posture the transaction between the parties rested at the time the alleged offense was committed.

The bank, having gained no advantage by the transaction could suffer no detriment by its undoing. Davis had lost no rights in the certificates of stock and could work no wrong upon the bank by repossessing himself thereof. It was the continuing duty of the parties to undo the illegal thing which they had done in the making and accepting of such deposit. If Davis had at any time demanded of the directors a return of his certificates, they would have had but one lawful course open to them, to-wit, to comply with such demand. Davis, as an officer and director of the bank, having access to the certificates, which were all the time his own property, could, without trespass, taken them into his own possession, either with or without demand made or permission had. His doing so was not an offense. He did not "embezzle, abstract or willfully misapply any of the moneys, funds or credits of such company" by taking his own certificates, which he had the immediate, continuing and absolute right to possess. He could not and did not take the entire property nor indeed any property beyond what he all the while had in the stock represented by those certificates; nor did he deprive the bank of the statutory lien which it had and retained therein.

There may be and doubtless are cases in which certificates of stock, as the evidence of ownership of some portion of the capital stock of a corporation and the muniments of title which pass from hand to hand by way of symbolical delivery of possession of the intangible property which they represent, may be considered as the stock itself. But it must not be forgotten that, as clearly set forth by Crew, J., in *Ball & The American Exchange Bank et al* v. *The Towle Mfg. Co.*, 67 Ohio St., 306, 314, it is an

"Erroneous assumption and mistaken notion that the stock itself follows the certificate, and that possession of the certificate is possession of the stock. There is a marked and obvious distinction between the *stock* of a corporation and the certificate representing such stock. The certificate of shares of stock in a corporation is not the stock itself, but is a mere evidence of the stockholder's interest itself, in the corporate property of the corporation which issues said certificate (*Cook on Stocks and Stock-*

*holders,* Section 485).    In the absence of statutory or charter requirement no certificate of stock is necessary to attest the rights of the shareholder in the corporation, and such certificate when issued to the owner of shares of stock is merely an evidence or acknowledgment of the owner's interest in the property of the corporation, but is not the property itself.    In law a corporation is the trustee of the corporate property and holds the same for the benefit of the stockholders, and so long as such corporation continues to have a legal existence and to carry on the business for which it was created, it alone is the proper custodian, and has possession of the corporate property.    In *Cook on Stocks and Stockholders,* Section 480, the author says:

"  'It has been held that if a stockholder whose stock has already been attached or sold on execution sells his certificate of stock after the levy of such attachment or execution, the vendee or transferee buys subject to such levy, even though he had no knowledge of it.    The stock in contemplation of law has already been seized by the levy, and the purchaser is bound to take notice of that fact.    The only means of avoiding this danger in the purchase of stock is by an inquiry at the office of the corporation at the time of making the purchase.' "

The circumstances of this case are such as to make this distinction both germane and necessary.

From what has been said it follows that all the proceedings in the trial upon the first count of the indictment were erroneous. and that the judgment of conviction is contrary to law.

Reversed.